FEDERAL LABOR RELATIONS
AUTHORITY

v.

INTERNAL REVENUE SERVICE (DISTRICT OFFICE UNIT), DEPARTMENT OF the TREASURY.

Nos. 87–1694, 87–1695, 87–1719
and 87–1720.

United States Court of Appeals,
District of Columbia Circuit.

Feb. 12, 1988.

---

of the decision, which serves to highlight the unions' concern in this case.

6. *See* note 4 *supra.*

Before WALD, Chief Judge,
ROBINSON, MIKVA, EDWARDS,
RUTH BADER GINSBURG, STARR,
SILBERMAN, BUCKLEY, WILLIAMS,
D.H. GINSBURG and SENTELLE,
Circuit Judges.

## ORDER

PER CURIAM.

The suggestion for initial hearing *en banc* of the Internal Revenue Service has been circulated to the full Court. No member of the Court requested the taking of a vote thereon. Upon consideration of the foregoing, it is

ORDERED, by the Court *en banc*, that the suggestion is denied.

Statement filed by HARRY T. EDWARDS, Circuit Judge, concurring in the denial of the suggestion of initial hearing en banc, with whom SILBERMAN, Circuit Judge, concurs.

HARRY T. EDWARDS, Circuit Judge, concurring in the denial of the suggestion of initial hearing en banc, with whom SILBERMAN, Circuit Judge, concurs:

In *National Treasury Employees Union v. FLRA,* 810 F.2d 295 (D.C.Cir.1987), this court held that, under the Federal Service Labor–Management Relations Statute ("FLRS"), 5 U.S.C. §§ 7101–7135 (1982 & Supp. IV 1986), a federal agency and a union may be required to bargain collectively during the term of their collective bargaining contract with respect to mandatory subjects of bargaining that are not addressed in the parties' agreement. In reaching this conclusion, the court overturned a Federal Labor Relations Authority ("FLRA" or "Authority") decision holding that federal employers were not obligated to bargain over union-initiated proposals during the term of existing agreements. The Authority had found that Congress intended to limit the bargaining obligation over union-initiated proposals to situations where the parties were negotiating

a basic collective bargaining agreement. The court rejected this position as unfounded under the FLRS and its legislative history, and wholly at odds with "clear precedent in the private sector on the specific issue presented." 810 F.2d at 301.

The private sector precedent to which the court referred was described as follows:

In the private sector ... there is clear and long-established precedent that the duty to bargain extends also to midterm proposals initiated by either management or labor, provided the proposals do not conflict with the existing agreement. This basic principle of private sector labor law was applied in *NLRB v. Jacobs Manufacturing Co.,* 196 F.2d 680, 684 (2d Cir.1952).

810 F.2d at 299. The court found this precedent to be controlling because "the Authority identified no practical distinctions between private and governmental needs as to midterm bargaining." *Id.* at 300. What the court failed to state, however, is that the principle enunciated in *Jacobs Manufacturing Co.* does not impose an absolute requirement that parties to a collective bargaining agreement always must negotiate with respect to mandatory subjects of bargaining during the term of an agreement. Indeed, such a proposition would be plainly wrong; there are literally scores of cases from the private sector holding that a union may waive its right to bargain during the term of an agreement, either pursuant to bargaining history, or by agreeing to something like a contractual "zipper clause," management rights clause or a grievance-arbitration procedure covering the matter in issue. *See generally* 1 THE DEVELOPING LABOR LAW 640–48 (C. Morris 2d ed. 1983).

The FLRA clearly recognized the full sweep of the private sector precedent following our remand of *National Treasury Employees Union v. FLRA.* In reconsidering the issue of union-initiated midterm bargaining, the Authority adopted a position far short of requiring negotiations with respect to *all* mandatory subjects not specifically addressed in an existing collective bargaining agreement. Rather, the

FLRA made it clear that the parties could waive midterm bargaining, either pursuant to express agreement or bargaining history. *Internal Revenue Serv. and National Treasury Employees Union,* 29 F.L.R.A. 162 (1987). The Authority's opinion on this point is highly instructive:

In agreement with the D.C. Circuit in this case and consonant with case law in the private sector, we conclude that the duty to bargain in good faith imposed by the Statute requires an agency to bargain during the term of a collective bargaining agreement on negotiable union proposals concerning matters which are not contained in the agreement unless the union has waived its right to bargain about the subject matter involved. Such a waiver of bargaining rights may be established by (1) express agreement, or (2) bargaining history. Further, any such waiver must be clear and unmistakable, and our determinations in this regard will be made on a case-by-case basis.

As to the first category of waiver, a union may contractually agree to waive its right to initiate bargaining in general by a "zipper clause", that is, a clause intended to waive the obligation to bargain during the term of the agreement on matters not contained in the agreement. Or, a union may waive its right to initiate bargaining over a particular subject matter. In determining whether a contract provision constitutes a clear and unmistakable waiver of the union's right to initiate bargaining, we will examine the wording of the provision as well as other relevant provisions of the contract, bargaining history, and past practice.

The second category of waiver, clear and unmistakable waiver as evidenced by bargaining history, concerns subject matters which were discussed in contract negotiations but which were not specifically covered in the resulting contract. In this category, waiver may be found, based on a case-by-case analysis of the facts and circumstances of each case, where the subject matter of the proposal offered by the union during mid-term negotiations was fully discussed and explored by the parties at the bargaining table. For example, where a union sought to bargain over a subject matter but later withdrew its proposal in exchange for another provision, a waiver of the union's right to bargain over the subject matter which was withdrawn would be found. The particular words of proposals offered during contract and mid-term negotiations need not be identical for a waiver to exist. On the other hand, the fact that a mid-term proposal may relate to a general subject area covered in a collective bargaining agreement will not relieve an agency of its obligation to bargain. Rather, the determinative factor is whether the particular subject matter of the proposals offered during contract and mid-term negotiations is the same.

In summary, we conclude that the duty to bargain in good faith imposed by the Statute requires an agency to bargain during the term of a collective bargaining agreement on negotiable union-initiated proposals concerning matters which are not addressed in the agreement and were not clearly and unmistakably waived by the union during negotiation of the agreement. Previous Authority decisions not consistent with this conclusion will no longer be followed.

*Id.* at 166–67 (footnote omitted).

Following the issuance of this opinion, the Government filed a Suggestion of Initial Hearing *En Banc* ("Suggestion"), claiming that the FLRA's decision involved a major and novel issue regarding the scope of federal agencies' bargaining duties under the FLRS. In advancing this claim, the Government views the most recent decisions of this court and the FLRA to require an agency, during the term of an existing agreement, to engage in further collective bargaining over any new issues that a union wishes to raise. Suggestion at 2–3. In an apparent effort to stress the gravity of the situation described, the Government argues that federal agency employers will be uniquely disadvantaged, as compared with their private sector counterparts, because "the FLRA has else-

where determined that waivers of bargaining rights are only 'permissive' subjects for negotiation, over which management may not bargain to impasse." Suggestion at 10–11. In other words, because of the alleged unavailability of "zipper" clauses, management rights clauses, and the like, the Government claims that agency employers always will be required to negotiate mandatory subjects of bargaining during the term of an existing agreement. This position is utterly specious.

First, the Government cites two cases, *FAA and Professional Airways Sys. Specialists*, 14 F.L.R.A. 644 (1984), and *FDIC and National Treasury Employees Union*, 18 F.L.R.A. 768 (1985), to suggest that waivers of bargaining rights (such as "zipper" clauses) are only permissive subjects of bargaining and, therefore, cannot be negotiated to impasse by management. Neither case stands for this proposition. In *FAA*, the Authority merely ruled that, after an agreement has expired, the employer need not maintain existing conditions with respect to permissive subjects, *i.e.*, those matters which are excepted from the obligation to negotiate by section 7106(b)(1) of the Statute. 14 F.L.R.A. at 647–48. This has nothing whatsoever to do with the point in issue here. And in *FDIC*, the FLRA ruled that an agency may not compel bargaining over a proposal that would allow management unilaterally to implement changes in conditions of employment with respect to matters that were properly subject to resolution by the Federal Service Impasses Panel. A decision that an agency could not compel bargaining to force a union to waive access to a statutory impasse procedure is plainly distinguishable from a decision requiring negotiations over "zip-

per" clauses that waive further bargaining during the term of an existing contract. *Cf. NLRB v. Magnavox Co.*, 415 U.S. 322, 325, 94 S.Ct. 1099, 1102, 39 L.Ed.2d 358 (1974) (although a union may waive economic rights of employees, it may not waive employees' rights to choose a new bargaining representative under the National Labor Relations Act).

Furthermore, even if the decisions in *FAA* and *FDIC* could be taken to mean what the Government here alleges, the FLRA has put the question to rest with its decision in *Internal Revenue Service*. The Authority has explicitly held that "a union may contractually agree to waive its right to initiate bargaining in general by a 'zipper clause', that is, a clause intended to waive the obligation to bargain during the term of the agreement on matters not contained in the agreement." 29 F.L.R.A. at 166. And, to make matters perfectly clear, that FLRA has said that "[p]revious Authority decisions not consistent with this conclusion will no longer be followed." *Id.* at 167.

In light of the foregoing, the Suggestion of Initial Hearing *En Banc* raises nothing more than a tempest in a teapot. Federal agency employers who wish to avoid continuous bargaining during the term of an agreement are free, just as are their private sector counterparts, to negotiate contract provisions to ensure this result.