**MISSOURI PACIFIC RAILROAD, et al., Plaintiffs-Appellees,**

v.

**RAILROAD COMMISSION OF TEXAS, et al., Defendants-Appellants.**

No. 87–1466.

United States Court of Appeals, Fifth Circuit.

July 29, 1988.

Robert B. Burns, Jr., Karl G. Johnson, Jr., Austin, Tex., for Missouri Pacific R.R. Co., Topeka, Santa Fe R.R., Kansas City Southern R.Y. and Louisiana and Arkansas Ry. Co.

Frank W. Calhoun, Houston, Tex., for Burlington Northern R.R.

Michael E. Roper, Dallas, Tex., for Missouri-Kansas-Texas R.R.

Hugh L. McCulley, Houston, Tex., for Southern Pacific Transp. and St. Louis-Southwestern Ry. Co.

Douglas Fraser, Asst. Atty. Gen., Energy Div./Transp., Austin, Tex., for Railroad Com'n of Texas, et al.

Lawrence M. Mann, Washington, D.C., J. Donald Bowen, Houston, Tex., for amicus curiae-Railway Labor Executives Assoc.

Before THORNBERRY, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellees are various railroads suing the Texas Railroad Commission ("Commission") to enjoin enforcement of 16 TEX. ADMIN. CODE § 5.622, which requires a caboose or alternative safety equipment on most trains travelling through Texas. This Court recently addressed related issues in a companion case involving regulation of rail walkways and visibility at grade crossings. *Missouri Pacific Railroad Co. v. Railroad Commission of Texas*, 833 F.2d 570 (5th Cir.1987) ("*MOPAC I*"). As with *MOPAC I*, this appeal concerns the preemptive scope of federal railroad regulations.[1] The district court found Texas § 5.622 completely preempted by three federal statutes: the Locomotive Boiler Inspection Act ("LBIA"), 45 U.S.C. § 22 *et seq.* (1986); the Federal Railroad Safety Act ("FRSA"), 45 U.S.C. § 421 *et seq.* (1986); and the Hazardous Materials Transportation Act

("HMTA"), 49 U.S.C. § 1801 *et seq.* (1976). Declaratory and injunctive relief accordingly was awarded to the railroads. We affirm the district court, but based on the clear application of the FRSA and its preemptive effect on § 5.622.

I.

Cabooses once were essential to train operation. Braking and speed were controlled in the caboose, and from it the crew could observe the movement of the train and check for overheating of the brakes, axles, and wheels. Technological advances over the years have greatly diminished the importance of cabooses to safe train operation. Automatic brakes are controlled from the locomotive, advances in wheel bearings decrease the risk of overheating, and monitoring devices simulate rear-car observation. Although manned cabooses may to a de minimus degree continue to enhance train safety, railroads in recent years have objected to the costliness of retaining cabooses since this elimination of significant safety considerations. Major railroads in 1982 executed a collective bargaining agreement with railroad labor unions, eliminating cabooses on 25% of all trains.

In 1986, the Texas Railroad Commission adopted regulation § 5.622, which requires an occupied caboose capable of communicating with the locomotive on all trains carrying certain hazardous materials, and also on trains over 2,000 feet in length which lack certain mechanical devices used to monitor the train and track.[2] The de-

---

1. The railroads presented additional claims to the district court, including alleged constitutional violations of the commerce clause and the contract clause. The district court chose to address solely the issue of preemption, basing its decision on the "settled practice" of avoiding purely constitutional questions unless necessary to the resolution of a case. *F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 735, 98 S.Ct. 3026, 3033, 57 L.Ed.2d 1073 (1978).

2. Section 5.622 provides as follows:
   (a) Except as provided in subsections (c) and (d) of this section, each railroad corporation operating in the state of Texas shall place a caboose occupied by at least one employee on the train crew as the last car on any freight train that is required by the Federal Railroad

Administration rules (49 Code of Federal Regulations Part 232) to have its air system and cars inspected by qualified inspecting employees or certified federal inspectors. The exception prescribed in subsection (d) of this section shall not apply to any train in which the consist includes any car containing a load or residue of a hazardous material included in the following Standard Transportation Commodity Code (Western Trunk Line Committee, Agent, Tariff STCC 6001 series) groups: 4901 (Class A explosives); 4902 (Class B explosives); 4904 (non-flammable compressed gases); 4905 (flammable compressed gases); 4906, 4907, 4908 (flammable liquids); 4920 (poisons Class A); 4921 (poisons Class B); and 4930 (corrosive materials).

tails of these devices and conditions which may excuse railroad compliance with the caboose requirement are set out in subsection (d) of the regulation. The district court determined that the FRSA preempted § 5.622 in its entirety. Alternatively, the court found subsections (a), (b), d(2), (4) and (5) preempted by a combination of (1) the FRSA, which addresses flag protection, dragging equipment detectors, and telemetry devices; (2) the LBIA, which covers the subject matter of locomotive equipment, and (3) the HMTA, which deals with the transportation of hazardous materials. *Missouri Pacific Railroad Company v. Railroad Commission of Texas,* 671 F.Supp. 466 (W.D.Tex.1987). We find we need only consider the FRSA's preemptive effect upon § 5.622.

## II.

Congress enacted the FRSA in 1970 "to promote safety in all areas of railroad operations and to reduce railroad-related accidents...." 45 U.S.C. § 421 (1986). The Federal Railroad Administration ("FRA") enforces the FRSA and promulgates railroad safety regulations. The FRSA contains an express preemption provision, which states:

The Congress declares that laws, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434 (1986).

Thus, § 434 of the FRSA mandates uniform national railroad safety standards, "to the extent practicable." States are precluded from regulating railroad safety in areas already covered by the Secretary of Transportation, unless the state regulation addresses "an essentially local safety haz-

(b) Each caboose must be equipped with an operable radio system which will enable two-way communication between the caboose and the head of the train.

(c) A caboose is not required on freight trains satisfying either of the following conditions:

(1) a length of 2,000 feet or less; or

(2) operating within a railroad yard or within yard limits as designated pursuant to 49 Code of Federal Regulations § 218.35.

(d) A caboose is not required on freight trains satisfying all of the following conditions:

(1) flag protection against following trains on the same track is not required by 49 Code of Federal Regulations § 218.37;

(2) the track route is equipped with wayside overheated journal and dragging equipment detectors located along such route, at intervals not exceeding 30 miles in distance, which are able to communicate directly to the train's operating crew information related to the safety of that train's operation, including: acknowledgment of the train's presence at the detector, the nature of defect found, and the location within the train of any defect detected;

(3) the track route is equipped with high-shifted load detectors in advance of locations where it can reasonably be foreseen that a high or shifted load could cause an unsafe condition when moving through such locations;

(4) there is an operating telemetry device located on the trailing end of the rear-most car capable of communicating the following information to the locomotive engineer: motion, brakepipe pressure, and power condition of the transmitting device;

(5) there is a counting device which enables the locomotive engineer to ascertain the length of the train; and

(6) there are no cars containing open top loads which exceed the railway's line clearances, as published annually (National Railway Publication Company, *Railway Line Clearances*), placed farther than 2,000 feet behind the controlling locomotive.

(e) Any railroad corporation may apply for a variance from the requirements of this section on a form to be prescribed by the Commission. Such application shall be governed by the rules contained in Chapter 5, Subchapter U of this title (relating to General and Special Rules of Practice and Procedure), as they may be from time to time amended. The Commission may approve such application for good cause shown.

(f) Each railroad corporation shall comply with the provisions of this section no later than six months after the effective date of this section.

ard." The Commission does not attempt to defend § 5.622 as "necessary to eliminate ... an essentially local safety hazard." Hence, our sole inquiry is whether the FRA has preempted § 5.622 by "covering the subject matter" of cabooses on trains.

A determination of federal preemption under the Supremacy Clause begins with inquiring "whether Congress explicitly or implicitly declared that the states are prohibited from regulating" the subject matter of the state law. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). Because no federal law directly addresses cabooses, we are concerned with implied, rather than express, preemption. The law of implied preemption provides that " 'where failure of ... federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such [state] regulation is appropriate or approved pursuant to the policy of the statute,' States are not permitted to use their police power to enact such a regulation." *Ray, supra,* 435 U.S. at 179, 98 S.Ct. at 1004–05, *citing Bethlehem Steel Co. v. New York State Labor Relations Board,* 330 U.S. 767, 774, 67 S.Ct. 1026, 1030, 91 L.Ed. 1234 (1947).

This Court applied *Ray* in *MOPAC I,* to determine whether the FRSA impliedly preempted Texas' rail walkway requirements. *MOPAC I* set out several general conclusions about the preemptive effect of the FRSA. We held that the FRSA does not evince a total preemptive intent because it specifically preserves a regulatory position for the states. *MOPAC I, supra* at 573. But although *MOPAC I* rejected implied FRA preemption of rail walkways, we must reach the opposite conclusion with respect to cabooses.

The situation before us differs significantly from that in *MOPAC I.* There, this Court determined that the FRA had declined certain rail walkway requirements because the proposed rules were vague or otherwise defective—not because the FRA considered walkway requirements unjustified. *MOPAC I* at 575, *quoting Southern Pacific Transportation Co. v. Public Utilities Comm'n of California,* 647 F.Supp.

1220 (N.D.Cal.1986). Consequently, we determined in *MOPAC I* that the FRA had not impliedly preempted state regulation of rail walkways; rather, the FRA appeared to be saying "we haven't looked at walkways yet." *Id.* at 576.

In the instant case, however, the FRA background information accompanying 49 C.F.R. 232, permitting the use of end-of-train telemetry devices as substitutes for visual brake inspection, demonstrates FRA consideration of safety in cabooseless operations. The 1986 FRA background report states:

The major objection raised by commentors opposed to the proposed rule was the opinion that elimination of a caboose from the end of a train adversely affects safety. For example, the comments of the Railway Labor Executives' association and the United Transportation Union called for new requirements, *e.g.,* overheated bearing/wheel detectors, train length restrictions, and dragging equipment detectors, to counteract the perceived safety detriment of cabooseless trains. FRA does not agree with this line of analysis. First, *nothing in any current FRA regulation requires a caboose on any train, nor does anything in the final rule issued in this docket authorize the removal of a caboose. The determination on whether a railroad uses a caboose on any given line is made through the collective bargaining process. Moreover, the FRA does not consider the lack of a caboose to be a safety issue per se.* While this final rule may facilitate railroads' obtaining economic benefits from cabooseless operations, it does not in any way determine whether a caboose will or will not be used.

51 Fed.Reg. 17, 300–301 (1986) (emphasis added). We conclude from this background statement that the FRA has fully considered the safety aspect of requiring cabooses and has determined that the issue does not involve safety. It is also clear that the FRA did not intend to leave to the states the matter of requiring cabooses. The FRA has drawn the affirmative conclu-

sion that the use of cabooses is a matter for collective bargaining, not for federal nor state regulation. A finding of implied preemption must follow. *MOPAC I* made clear that implied preemption under *Ray* arises when the policymaker appears to be saying "we haven't done anything because we have determined it is appropriate to do nothing." *Supra,* at 576. The FRA has determined it is appropriate for itself to do nothing about cabooses, and affirmatively has left the matter not to the states but to collective bargaining. Under these circumstances, we are compelled to conclude that the FRA has impliedly preempted state regulation of cabooses.[3]

■ We note further that virtually all state regulations affecting the train itself appear preempted by federal law.[4] The LBIA completely preempts the field of locomotive equipment. *Napier v. Atlantic Coast Line R.R. Co.,* 272 U.S. 605, 613, 47 S.Ct. 207, 210, 71 L.Ed. 432 (1926); *MOPAC I, supra,* 833 F.2d at 576 n. 7 ("State attempts to prescribe *any* locomotive safety equipment must necessarily fail."); and the FRA has regulated most aspects of train safety. Moreover, it is difficult to imagine a state regulation of the train itself, as opposed to the right of way, which could escape being a burden upon commerce under Article I, Section 8, Clause 3 of the United States Constitution.

But whether there exist some obscure train safety issues which have yet to be faced by the FRA need not deter us here. We find significant guidance by noting the substantial burden on commerce created by a state caboose requirement. The nature of such a burden was discussed over 40 years ago in the leading case of *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945). The case involved the application of a state law limiting the length of trains. Even though the Court recognized some safety element in limiting the length of trains, that safety element was found to be outweighed by the burden upon commerce created from state laws limiting the length of trains. The Court stressed that the Arizona train limit law required trains whose length exceeded Arizona's limits to either stop at the Arizona border and be broken up, or to comply with the Arizona law in adjoining states as well. *Id.* 325 U.S. at 775; 65 S.Ct. at 1623.

A similar effect results from the Texas caboose requirement. Freight trains entering the state would be required to stop and add a caboose unless the railroad has complied with the six detailed requirements of Commission Regulation § 5.622(d). *See* fn. 2, *supra.* The alternative to halting the train at the border of the state to add a

3. We acknowledge the Commission's argument that the language of § 434, which explicitly provides a role for state regulation in the absence of corresponding federal law, seems to contradict the notion of implied preemption. Our reading of the legislative history of § 434, however, fails to indicate congressional intent that states be permitted to regulate *any* area of railroad safety for which a FRA rule is lacking. A congressional hearing addressing federal-state relations under the FRSA, states:

> *To avoid a lapse in regulation,* ... the states may adopt or continue in force any law, rule, regulation or standard relating to railroad safety until the Secretary has promulgated a specific rule, regulation, or standard covering the subject matter of the state requirement. This prevens [sic] the mere enactment of a broad authorizing Federal statute from preempting the field...."

*Railroad Safety and Hazardous Materials Control: Hearings on H.R. 7068, H.R. 14417, H.R. 14478, and S. 1933 Before the Subcomm. on Transportation and Aeronautics of the House*

*Comm. on Interstate and Foreign Commerce,* 91st Cong., 2d Sess. 51 (1970) (statement of Harley O. Staggers, Chairman Interstate and Foreign Commerce Committee) (emphasis added). We read this statement as indicative of congressional intent that states play an important stopgap role in the safe transition from state to federal regulation of railroads. The FRSA has been in effect eighteen years. If there remain non-local matters of railroad safety open for state regulation, they do not include areas in which the FRA has chosen not to act. Here, we stress again, the FRA has determined that the use of cabooses is not a safety concern.

4. To this generalization we find only few and minor exceptions, such as this Court's recent decision upholding the requirement of fire extinguishers and first aid kits on cabooses. *MOPAC I, supra,* at 576. *See also Baltimore And Ohio R.R. Co. v. Oberly,* 837 F.2d 108 (3d Cir. 1988) (state noise control regulation affecting railroad facility not preempted by Federal Noise Control Act).

caboose would, of course, require the railroad to carry a caboose in states where it was not required to do so, thus extending the Texas law as a burden upon commerce in those other states.[5] This same consideration was found to be of great significance in *Southern Pacific Co. v. Arizona*, where it was shown that the Arizona train limit statute, as a practical matter, was controlling the length of trains all the way from Los Angeles, California to El Paso, Texas. *Supra*, 325 U.S. at 775; 65 S.Ct. at 1523. The burden upon commerce element, upon balance, is even more manifest in this case because we have a federal government determination that safety considerations are not involved in the requirement that freight trains be equipped with cabooses. *See* FRA Background Comments, 51 Fed.Reg. 17, 300–301 (1986) ("the FRA does not consider the lack of a caboose to be a safety issue per se.") We point out that we apply the burden on commerce analysis in this case not to make a constitutional decision but to emphasize the need for preemption; that is, we find valid federal preemption in part by emphasizing the burden on commerce created by the state regulations.

One final consideration must be stated. The railroads under the regulation can gain exemption from the caboose requirement by meeting the six detailed demands of the regulation mentioned immediately above, provided the trains are not transporting hazardous materials. The caboose requirement may or may not have been intended as an indirect means of requiring the railroads to install load detectors and overheating detectors along tracks, as well as telemetry devices capable of communicating with the locomotive engineer. But it makes no difference. Standing on their own, these devices clearly are not subject to state regulation because of federal preemption. Most of the detectors and devices would require installations within the locomotive for reception and monitoring

purposes. *See MOPAC I, supra,* 671 F.Supp. at 474–75. Yet there is nothing clearer in the law than the fact that the locomotives themselves are subject to no regulations, requirements, or additions to equipment at all. *Napier, supra,* 272 U.S. at 613, 47 S.Ct. at 210; *MOPAC I, supra,* at 576 n. 7. Thus, the alternative to the caboose requirement given to the railroads by the regulation is barred by the wall of express preemption.

We conclude that Texas' regulation requiring cabooses on trains is preempted by the FRSA through its enforcing body the FRA. Accordingly, § 5.622 is invalid. The decision of the district court is

AFFIRMED.

---

5. We distinguish the situation before us from that of *Terminal Railroad Ass'n. v. Brotherhood of Railroad Trainmen,* 318 U.S. 1, 63 S.Ct. 420, 87 L.Ed. 571 (1943), in which the Supreme Court held that a state caboose regulation did not create an unconstitutional burden on commerce. The *Terminal Railroad* decision was not a preemption case. There was no related exercise of federal authority which could be found to be in conflict with the state law. *Supra,* 318 U.S. at 3, 7; 63 S.Ct. at 421–23. Further, the case was based upon safety considerations as of 46 years ago, before much of the development of modern safety devices and equipment.