842 P.2d 1333

**Henry Q. DANIEL, Plaintiff/Appellee,**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY, a Delaware corporation, Defendant/Appellant.**

No. 2 CA–CV 92–0020.

Court of Appeals of Arizona, Division 2, Department A.

July 7, 1992.

Review Denied Jan. 20, 1993.

Garry B. Bryant, Tucson, for plaintiff/appellee.

Tower, Byrne, Beaugureau & Shaw by David L. Beaugureau and Terrance L. Sims, Phoenix, for defendant/appellant.

## OPINION

LIVERMORE, Chief Judge.

Plaintiff Henry Daniel, a brakeman for defendant Southern Pacific Transportation Co., was seriously injured in a train derailment. He successfully sued under the Federal Employers' Liability Act, 45 U.S.C. § 51, asserting various negligent acts and omissions. Defendant appeals claiming that one of the alleged negligent omissions could not be a basis of recovery because of federal preemption, and that the trial court committed evidentiary and instructional errors. We affirm.

The derailment was caused by the pulling apart of track. One of the theories of liability presented to the jury was that this was caused by the failure properly to install adequate rail anchors. Prior to 1982, the Federal Rail Administration (FRA) had a regulation (49 C.F.R. § 213.125) that read: "Longitudinal rail movement must be effectively controlled. If rail anchors which bear on the sides of ties are used for this purpose, they must be on the same side of the tie on both rails." In 1982, as part of a number of other rulemaking changes, that regulation was withdrawn, 47 F.R. 7275–01, the FRA stating:

> FRA proposes to delete § 213.125 concerning use of rail anchors. While rail anchors are an important aspect of lateral track stability, the existing rule is virtually unenforceable because of the vagueness of the term "effectively con-

trolled." It is recognized that if longitudinal rail movement is permitted to exist, conditions may develop that lead to either track buckling or pull-aparts, both of which can and do cause train accidents. Therefore, FRA is conducting research in this area in order to more thoroughly understand track structure. This section may be re-established when research results identify specific, measurable requirements for safe operations.

Defendant contends that this action was an agency determination that anchors were unnecessary for safety and that such a determination had a preemptive effect preventing liability premised on the failure to anchor rails properly.

The legal basis of defendant's contention is unassailable. 45 U.S.C. § 434 prohibits state regulation where the FRA has enacted a rule covering the same subject matter. *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548 (11th Cir. 1991); *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149 (9th Cir.1983). Preemption also occurs if the failure to regulate is due to a determination that any such regulation would not promote safety. *Norfolk & Western Ry. Co. v. Public Utilities Comm'n.*, 926 F.2d 567 (6th Cir.1991); *Missouri Pacific R.R. v. Railroad Comm'n. of Texas*, 850 F.2d 264 (5th Cir.1988). And, when preemption is found, it applies both to formal state regulations and to negligence claims premised on the failure to do something other than the regulations require. *Easterwood v. CSX Transportation, Inc., supra; Marshall v. Burlington Northern, Inc., supra.*

Defendant's preemption argument fails, however, because there is nothing to indicate that the FRA determined that rail anchors were unnecessary for safety. Rather, the agency found the existing regulation too vague to enforce and its state of knowledge about the interrelationship of rail anchors and safety too limited to permit drafting a more specific regulation. Neither reason can be said to indicate a preemptive intent. *Easterwood v. CSX Transportation, Inc., supra; Missouri Pacific R.R. v. Railroad Comm'n. of Texas,*

*supra.* In view of FRA's specific statements concerning rail anchors, we do not believe the general comment that certain rules "no longer considered necessary for safety" were being eliminated in 47 F.R. 7275–01 can be said to apply to the rail anchor rule.

■ Defendant's second argument on appeal is that the trial court erred in allowing evidence of track defects at locations other than those where the derailment occurred. This occurred in the testimony of Raymond Bernal, an investigator for the Arizona Corporation Commission and the FRA, who stated that he had noticed prior to the accident many defects in track maintenance and safety, including the area where the derailment occurred, and had called those defects to the attention of Southern Pacific personnel. The personnel had replied that they did not have enough money to correct all the problems. While this testimony could have been narrowed to the particular area of the derailment, it is admissible to show notice of defects and heedlessness of safety. We do not believe its broader and impermissible implications, that the existence of defects elsewhere indicated their existence here, caused any harm in this case. Defendant's counsel was careful to keep the focus where it ought to be.

Finally, defendant argues that the trial court erred in not instructing that the happening of an accident standing alone does not permit a finding of negligence. We have not been furnished the instructions given. We assume, therefore, that the concept in the requested instruction was adequately covered in the instructions given concerning burden of proof and negligence. *State v. Wiley*, 144 Ariz. 525, 698 P.2d 1244 (1985); *Harvey v. Kellin*, 115 Ariz. 496, 566 P.2d 297 (1977).

Affirmed.

LACAGNINA, P.J., and HOWARD, J., concur.