962 F.2d 48
 140 L.R.R.M. (BNA) 2206, 295 U.S.App.D.C. 239
 DEPARTMENT OF the NAVY, MARINE CORPS LOGISTICS BASE, ALBANY,
GEORGIA, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
American Federation of Government Employees, AFL-CIO, Intervenor.
MARINE CORPS LOGISTICS BASE, BARSTOW, CALIFORNIA, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
American Federation of Government Employees, AFL-CIO, Intervenor.
 Nos. 91-1211, 91-1212.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 24, 1992.
Decided April 24, 1992.
 
 Petitions for Review and Cross-Applications for Enforcement of Orders of the Federal Labor Relations Authority.
 Robert M. Loeb, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and John F. Daly, Atty., Dept. of Justice, Washington, D.C., were on the brief, for petitioners in 91-1211 and 91-1212.
 James F. Blandford, Atty., Federal Labor Relations Authority, with whom William E. Persina, Sol., William R. Tobey, Deputy Sol., and Arthur A. Horowitz, Associate Sol., Washington, D.C., were on the brief, for respondent in 91-1211 and 91-1212. Frederick M. Herrera, Atty., Washington, D.C., also entered an appearance for respondent.
 Mark D. Roth, Charles A. Hobbie and Alexia McCaskill, Washington, D.C., entered appearances for intervenor in 91-1211 and 91-1212.
 Before: EDWARDS, SENTELLE and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 The question presented in this case is whether an agency, which has reached agreement with a union regarding the procedures to be followed in exercising a management right, and has memorialized the agreed-upon procedures in a collective bargaining agreement, must nonetheless bargain with the union anew when it takes action pursuant to the agreement. The Federal Labor Relations Authority answered this question in the affirmative. We reverse.
 
 
 2
 In 1987, the United States Marine Corps ("Marine Corps") reassigned several employees at its Albany, Georgia, facility to temporary duties and established new performance standards for certain employees at its Barstow, California, facility. Because both actions were taken pursuant to contractual authority, the Marine Corps refused to engage in any further "impact and implementation" bargaining with union representatives before effecting the reassignments and the new performance standards. The Federal Labor Relations Authority ("FLRA" or "Authority") held that the agency had committed unfair labor practices by failing to consult and bargain with the union over the disputed actions, even though the applicable collective bargaining agreement contained provisions covering the implementation of both actions, and the Marine Corps had followed the procedures prescribed by the agreement. Rejecting the Marine Corps' contention that it had no duty to bargain because the impact and implementation matters at issue were "covered by" the collective bargaining agreement, the Authority held that bargaining was required because the agreement did not "clearly and unmistakably waive" the union's bargaining right. See Marine Corps Logistics Base, Barstow, Cal., 39 F.L.R.A. 1126 (1991) ("Barstow"); Department of the Navy, Marine Corps Logistics Base, Albany, Ga., 39 F.L.R.A. 1060 (1991) ("Albany").
 
 
 3
 We hold that the Authority committed legal error in Albany and Barstow by improperly equating the question of whether the disputed agency actions were "covered by" the collective bargaining agreement with the question of whether the union had waived its right to bargain. A waiver occurs when a union knowingly and voluntarily relinquishes its right to bargain over a matter; but where the matter is covered by a collective bargaining agreement, the union has exercised its bargaining right and the question of waiver is irrelevant. The Authority properly recognized that there is no duty to bargain over matters "covered by" a collective bargaining agreement; since the reassignments at the Albany, Georgia, facility and the implementation of performance standards at the Barstow, California, facility were "covered by" the parties' collective bargaining agreement, neither matter should have been subject to further bargaining except upon mutual consent. The Authority, however, avoided this result by purporting to rely on a "waiver" analysis, pursuant to which "covered by" is defined so narrowly that bargaining always will be required. By adopting this flawed approach, the Authority departed from its own prior cases and the private sector principles upon which it purported to rely; it also reached results at odds with both the governing statute and common sense. Accordingly, we reverse the Authority's decisions in both cases.
 
 I. BACKGROUND
 
 4
 The Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (1988) ("FSLMRS" or "Statute"), grants most federal employees the right to organize and bargain collectively. See id. §§ 7102, 7103(a)(2). It requires agencies to negotiate with the recognized bargaining representative of their employees regarding "conditions of employment," id. § 7103(a)(12), which are defined as "personnel policies, practices, and matters ... affecting working conditions," id. § 7103(a)(14). However, the Statute specifically excludes certain "management rights" from the duty to bargain. These include matters such as hiring decisions, the assignment of work and the establishment of performance standards. See id. § 7106(a)(2).
 
 
 5
 Although an agency is not required to bargain with respect to its management rights per se, it is required to negotiate about the "impact and implementation" of those rights--that is, the "procedures which management officials of the agency will observe in exercising" management rights and "appropriate arrangements for employees adversely affected by the exercise" of such rights. Id. § 7106(b)(2), (3); see also United States Dep't of the Air Force v. FLRA, 949 F.2d 475, 477 & n. 2 (D.C.Cir.1991). The FSLMRS also requires agencies to consult with employee unions before implementing "any substantive change in conditions of employment proposed by the agency." 5 U.S.C. § 7117(d)(2)(A). An agency commits an unfair labor practice if it refuses to bargain over "impact and implementation" issues or fails to consult with the employees' representative over proposed changes in conditions of employment.[1] Id. § 7116(a)(5).
 
 
 6
 The cases at bar concern duty to bargain disputes between the Marine Corps and the American Federation of Government Employees ("AFGE"), which is the recognized bargaining representative of certain civilian employees at the Marine Corps' Albany, Georgia, and Barstow, California, facilities. The relationship between the Marine Corps and the AFGE is governed by a collective bargaining agreement called the Master Labor Agreement ("MLA"). The MLA establishes a grievance procedure to resolve disputes over the interpretation of the agreement and contains an "integration" clause which provides that the MLA constitutes the "total agreement" between the parties. See Albany, 39 F.L.R.A. at 1062, 1064.
 
 
 7
 The MLA sets forth procedures governing the exercise of certain management rights, including the temporary reassignment ("detailing") of employees and the establishment of performance standards. The disputes underlying the instant petitions for review arose when the Marine Corps decided to "detail" four employees at its Albany facility and to modify the performance criteria applicable to certain employees at its Barstow facility. The AFGE requested consultation and "impact and implementation" bargaining with respect to both decisions, but the Marine Corps refused.
 
 A. Petition No. 91-1211 (Albany, Georgia)
 
 8
 Article 16 of the MLA governs the "detailing" of employees. It provides that an employee's duties may be changed in order to "meet[ ] temporary needs ... when necessary services cannot be obtained by other desirable or practical means"; the reassignment may be to a higher or lower grade level, or to a set of duties that has not yet been classified. See Albany, 39 F.L.R.A. at 1077 n. 1 (ALJ Decision) (reprinting Article 16). Article 16 also places limits upon the duration of a "detail" and addresses certain procedural matters relevant to the implementation of details, including how details must be documented, when details will result in temporary promotions, when competitive procedures must be used and how deductions of union dues will be handled for detailed employees. See id. Disputes arising from management decisions to detail employees are subject to the grievance procedure contained in Article 13 of the MLA. See id. at 1078.
 
 
 9
 In May 1987, the management of the Marine Corps facility at Albany, Georgia, decided to reassign four employees in order to address an unexpected need for vehicle maintenance services. Two "automotive repair inspectors" and two "mobile equipment servicers" were "detailed" to assist the facility's regular auto mechanics for a period of 120 days. Although none of the reassigned employees suffered a reduction in pay, their new work was less desirable than their former duties. The Marine Corps informed the union steward at the facility of the reassignment decision on the day that it took effect.[2] The AFGE subsequently requested bargaining with the Marine Corps over the impact of the reassignment on the four affected employees. The Marine Corps refused, asserting that it had no bargaining obligation because it had complied with the procedures contained in Article 16 of the MLA. In June 1987, the AFGE filed an unfair labor practice charge, asserting that the Marine Corps had violated its statutory duty to bargain.
 
 
 10
 On August 31, 1988, an Administrative Law Judge issued a decision in the union's favor. The ALJ reached this result by applying a waiver analysis. He began by finding that the temporary reassignment of the four employees constituted a change in their conditions of employment in that the new assignments were less desirable and might prejudice the employees' prospects for promotion; because this change was more than de minimis, the ALJ reasoned, the Marine Corps was required to bargain about the change unless the union had waived its right to bargain. See id. at 1081. Turning to the language of Article 16, the ALJ found that the Article did not constitute a "clear and unmistakable" waiver of the AFGE's right to bargain about the impact and implementation of the decision to detail. Id. at 1082. Having found the existence of a duty to bargain and no waiver by the union, the ALJ held that the Marine Corps had committed an unfair labor practice by refusing to negotiate with the AFGE. Id. at 1083.
 
 
 11
 On appeal of the ALJ's decision, the Marine Corps' primary argument was that it had no obligation to bargain because it had bargained over the impact and implementation of "detailing" during collective bargaining negotiations, with Article 16 being the result of that bargaining; as a result, the Marine Corps contended, the ALJ erred by analyzing the case in terms of waiver. The Authority rejected the Marine Corps' argument and affirmed the ALJ's decision, although on somewhat different grounds than those advanced by the ALJ. See Albany, 39 F.L.R.A. at 1065-70.
 
 
 12
 The Authority began its analysis by agreeing with the Marine Corps that if a matter that would otherwise be a mandatory subject of bargaining is "covered by" a collective bargaining agreement, there is no further obligation on the part of either party to bargain about the matter during the term of the agreement. Id. at 1065. However, purportedly relying upon its decision in Internal Revenue Service, 29 F.L.R.A. 162 (1987), the Authority proceeded to apply a very narrow test for determining when a matter is "covered by" a collective bargaining agreement.
 
 
 13
 The Authority will consider a negotiable matter to be covered by the agreement, and therefore to be removed from the area of required bargaining, if the particular subject matter of a union's bargaining request is specifically addressed in the negotiated agreement. If the particular subject matter is not specifically addressed, ... we then look to see whether the union nevertheless otherwise waived its right to engage in future bargaining about that subject.
 
 
 14
 Albany, 39 F.L.R.A. at 1065 (emphasis added). Relying upon the ALJ's findings, the Authority held that the MLA did not "specifically address" the "particular subject matter" of the union's bargaining request--i.e., the impact of the "detail" on the four affected employees--because the Agreement did not contain provisions regarding the " 'implementation of individual details on the local level.' " Id. at 1067 (quoting ALJ Decision) (emphasis added).
 
 
 15
 The Authority next turned to the question of whether the AFGE had "otherwise waived" its bargaining right. Applying the same "specifically addressed" standard set forth above, the FLRA found that Article 16 did not waive the union's right to bargain. Id. at 1069-70. The Authority further concluded that neither the MLA's integration clause nor the parties' bargaining history effected a waiver of the AFGE's bargaining right. Id. at 1069 n. 5, 1070. Accordingly, the Authority held that the Marine Corps had violated the Statute and entered a bargaining order.
 
 
 16
 B. Petition No. 90-1212 (Barstow, California)
 
 
 17
 Article 31 of the MLA governs the establishment of a "performance appraisal system" by the Marine Corps. It provides, inter alia, that: (1) management will establish "performance elements" and "performance standards"; (2) employees must be given the chance to participate in the establishment of performance standards; (3) employees must be given adequate notice of the standards that apply to them; (4) employees may propose changes in performance standards at any time; and (5) the standards established must be "fair and reasonable." See Barstow, 39 F.L.R.A. at 1139 (ALJ Decision). Article 13 of the MLA subjects disputes regarding performance criteria to the MLA's grievance and arbitration procedures.
 
 
 18
 In July 1987, the management of the Marine Corps' facility at Barstow, California, decided to modify the performance criteria applicable to some of its production employees. On July 31, 1987, supervisors held a meeting with the affected employees at which the proposed changes were discussed. The shop foreman subsequently met individually with each employee and solicited input regarding the new performance standards. Id. As the Authority acknowledges, these actions fully complied with the requirements of Article 31.
 
 
 19
 On August 7, 1987, the AFGE requested bargaining over the implementation of the new performance standards. The Marine Corps refused to bargain and, in November 1987, implemented the changes. The AFGE subsequently filed an unfair labor practice charge, alleging that the Marine Corps had violated the Statute by changing the working conditions of unit employees without engaging in "impact and implementation" bargaining.
 
 
 20
 The ALJ upheld the union's unfair labor practice charge in a decision issued on November 8, 1988. The ALJ first rejected the Marine Corps' contention that it had no duty to bargain over the impact and implementation of the new performance standards because that matter was "covered by" Article 31 of the MLA. Relying upon Department of the Air Force, Air Force Logistics Command, Wright-Patterson Air Force Base, Ohio, 21 F.L.R.A. 609 (1986) ("Wright-Patterson"), a waiver case, the ALJ concluded that Article 31 did not relieve the Marine Corps of its duty to bargain. See Barstow, 39 F.L.R.A. at 1142 (ALJ Decision). The ALJ then went on to find that the AFGE had not otherwise waived its right to engage in impact and implementation bargaining. Id. at 1143. Based upon these findings, the ALJ held that the Marine Corps had violated the Statute by refusing to negotiate with the AFGE.
 
 
 21
 On administrative appeal, the FLRA affirmed the decision of the ALJ. Barstow, 39 F.L.R.A. at 1134. As in Albany, the Authority rejected the Marine Corps' argument that the provisions of the MLA relieved it of its duty to bargain. Applying the narrow "covered by" test used in Albany--which the Authority explicitly equated with the waiver standard of Wright-Patterson--the Authority concluded that Article 31 of the MLA did not remove the agency's bargaining obligation because it did not "specifically address the full range of impact and implementation issues." Id. at 1133. Accordingly, the Authority ordered the Marine Corps to bargain with the AFGE.
 
 
 22
 The Marine Corps now petitions for review of the Authority's decisions in Albany and Barstow. The Authority has filed a cross-application for enforcement.
 
 II. DISCUSSION
 
 23
 We will defer to the Authority's interpretation of the FSLMRS so long as that interpretation is "reasonable and defensible." Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). However, we are under no obligation to "rubber stamp" the Authority's actions; when they are "incompatible with either the terms or the purpose of the controlling statute, or ... conflict with prior FLRA precedent," we are obliged to intervene. AFGE, Local 32 v. FLRA, 853 F.2d 986, 991 (D.C.Cir.1988). Such is the case here.
 
 
 24
 The issue presented for review is narrow. The only question before us is whether temporary reassignments and the implementation of new performance standards were "covered by" the parties' collective bargaining agreement such that the Marine Corps could take action with respect to those matters without first having to engage in impact and implementation bargaining. The Authority agrees with the agency that where a matter that would otherwise be a mandatory subject of bargaining is "covered by" or "contained in" a collective bargaining agreement, the parties are absolved of any further duty to bargain about that matter during the term of the agreement. See Barstow, 39 F.L.R.A. at 1132; Albany, 39 F.L.R.A. at 1065. The Marine Corps and the Authority part company, however, over the question of when a matter is "covered by" a negotiated agreement. In order to understand the Authority's position, and the agency's complaint, it is necessary to trace briefly the genealogy of the Authority's "covered by" test.
 
 
 25
 A. The Development of the Authority's "Covered By" Test
 
 
 26
 The FLRA's present test for determining when a mandatory bargaining subject is "covered by" a collective bargaining agreement has its genesis in the Authority's 1985 decision in Internal Revenue Service, 17 F.L.R.A. 731 (1985). There, the Authority held that, under the FSLMRS, agencies have no duty to bargain over union-initiated proposals during the term of a collective bargaining agreement. See id. at 732. The affected union petitioned for review, and this court vacated the Authority's decision. National Treasury Employees Union v. FLRA, 810 F.2d 295 (D.C.Cir.1987) ("NTEU"). Based upon the FSLMRS's policy of promoting collective bargaining and the "clear precedent in the private sector," we rejected the Authority's conclusion that agencies have no mid-term duty to bargain with respect to union-initiated proposals.[3] Id. at 301.
 
 
 27
 On remand, the Authority modified its prior position and concluded that the FSLMRS sometimes does require agencies to bargain over union-initiated proposals during the contract term. Internal Revenue Serv., 29 F.L.R.A. 162 (1987) ("IRS II"). Relying upon the court's reasoning in NTEU and the relevant private sector precedents, the Authority held:
 
 
 28
 [T]he duty to bargain in good faith imposed by the Statute requires an agency to bargain during the term of a collective bargaining agreement on negotiable union proposals concerning matters which are not contained in the agreement unless the union has waived its right to bargain about the subject matter involved. Such a waiver of bargaining rights may be established by (1) express agreement, or (2) bargaining history. Further, any such waiver must be clear and unmistakable....
 
 
 29
 Id. at 166 (emphasis added). Thus, under IRS II, mid-term bargaining can be avoided either (1) when it concerns a matter contained in an agreement or (2) when bargaining has been waived by agreement or pursuant to the parties' bargaining history. In other words, "contained in" (or "covered by") and "waiver" are categorically distinct, and the "clear and unmistakable" test applies only to the latter ("waiver") category.[4]
 
 
 30
 The Internal Revenue Service petitioned for review of the Authority's decision in IRS II and sought initial hearing en banc, arguing that the Authority's analytical approach would wreak havoc in public sector labor relations by requiring agencies to engage in endless mid-term bargaining. This court denied the request for initial hearing en banc and dismissed the petition for review without prejudice. See FLRA v. Internal Revenue Serv., 838 F.2d 567 (D.C.Cir.1988) (en banc). Two judges of this court, concurring in the denial of initial hearing en banc, emphasized the limited nature of the mid-term duty to bargain recognized by the Authority in IRS II: "In reconsidering the issue of union-initiated midterm bargaining, the Authority adopted a position far short of requiring negotiations with respect to all mandatory subjects not specifically addressed in an existing collective bargaining agreement." Id. at 568 (Edwards, J., joined by Silberman, J., concurring).
 
 
 31
 Following its decision in IRS II, however, the Authority began to lose the doctrinal clarity that it exhibited in that decision. In United States Army Corps of Engineers, Kansas City District, Kansas City, Missouri, 31 F.L.R.A. 1231 (1988) ("Corps of Engineers"), the Authority faced a duty to bargain case in which the union had advanced a proposal concerning the procedures used by the agency to determine employee performance ratings--a subject dealt with in the parties' collective bargaining agreement. The FLRA first addressed the agency's claim that it had no bargaining obligation because the subject matter of the union proposal was "covered by" the negotiated agreement. Noting that IRS II had not defined the term "covered by," the Authority adopted, as the standard for determining when a matter is "covered by" a negotiated agreement, the same test used in IRS II to determine the existence of a waiver by bargaining history, see note 4 supra--i.e., whether the relevant contractual provision specifically addresses the "particular subject matter" of the union's bargaining request.[5] 31 F.L.R.A. at 1235-36. Applying this standard, the Authority went on to conclude, not surprisingly, that the subject matter of the union proposal in Corps of Engineers was not "covered by" the collective bargaining agreement because the agreement did not "clearly and unmistakably waive" the union's right to bargain about performance ratings. See id.
 
 
 32
 In essence, what the Authority did in Corps of Engineers was to transform the two-part duty to bargain test of IRS II into a one-part test by collapsing the "contained in"/"covered by" inquiry into the "waiver" inquiry. The Authority did this by applying, as the test for the "covered by" inquiry, the same test that it created in IRS II to determine the existence of a waiver by bargaining history.[6]
 
 
 33
 In Albany and Barstow, the Authority applied its Corps of Engineers test for when a matter is "covered by" a collective bargaining agreement and determined that the impact and implementation matters raised by the AFGE were not "covered by" the MLA--i.e., that the provisions of the MLA did not evince a clear and unmistakable waiver of the union's right to bargain over those matters. Since its decisions in Albany and Barstow, the Authority has continued to apply the "collapsed" version of the IRS II test; indeed, in more recent cases, the Authority appears to have abandoned any pretense of a two-part inquiry and applied a pure waiver analysis.[7] What has been missing, however, is any coherent or rational explanation in support of the FLRA's new approach.
 
 
 34
 B. Validity of the Authority's "Waiver" Approach to Duty to Bargain During the Term of an Agreement
 
 
 35
 As described above, the Authority applied a "clear and unmistakable waiver" standard in finding the existence of a duty to bargain in Albany and Barstow. The Marine Corps attacks the Authority's "waiver" approach on the grounds that it: (1) represents an unexplained departure from the rule of IRS II; (2) contravenes the policies of the FSLMRS; and (3) conflicts with the private sector labor law principles upon which the Authority purported to rely. We agree with the Marine Corps on all three counts, and therefore we reverse the FLRA's decisions in the two cases under review.
 
 1. Departure from Precedent
 
 36
 It is well-established in this circuit that where an agency departs from its prior cases, it must offer a reasoned explanation for its change in view. See, e.g., AFGE, Local 32, 853 F.2d at 991; Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C.Cir.1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). As we have pointedly stated, "[d]ivergence from agency precedent demands an explanation." Hall v. McLaughlin, 864 F.2d 868, 872 (D.C.Cir.1989).
 
 
 37
 As explained in the preceding section, the Authority, in IRS II, adopted a two-part test for determining when an agency has a mid-term duty to bargain with employee unions. See 29 F.L.R.A. at 166. Under the IRS II approach, the agency must engage in mid-term negotiations over an otherwise bargainable matter raised by the union, except when: (1) the matter is covered by the parties' collective bargaining agreement; or (2) the union has "clearly and unmistakably" waived its right to bargain, either by express agreement (e.g., a zipper clause[8]), or through its bargaining history with the agency. Id. The test adopted by the Authority for determining the existence of the second type of waiver--waiver by bargaining history--is whether "the particular subject matter of the proposals offered during contract and mid-term negotiations is the same." Id. at 167 (emphasis added); see also note 4 supra.
 
 
 38
 Thus, under the rule of IRS II, whether an agency has a mid-term duty to bargain depends upon two separate inquiries: whether the matter about which the union seeks to negotiate is "covered by" or "contained in" the collective bargaining agreement; and, if not, whether the union has somehow relinquished its right to bargain. The "clear and unmistakable waiver" standard is relevant only to the second inquiry.
 
 
 39
 The approach adopted by the Authority in IRS II is perfectly consistent with the FSLMRS, eminently reasonable and patently sensible. As the Authority noted, see 29 F.L.R.A. at 166, the IRS II approach is also consistent with private sector labor law, under which it is well-recognized that the parties to a collective bargaining agreement have no obligation to engage in mid-term negotiation over subjects covered by the agreement. See NLRB v. Jacobs Mfg. Co., 196 F.2d 680, 684 (2d Cir.1952); see also Local Union No. 47, Int'l Bhd. of Elec. Workers v. NLRB, 927 F.2d 635, 640 (D.C.Cir.1991) ("Electrical Workers"); United Mine Workers of Am., Dist. 31 v. NLRB, 879 F.2d 939, 943-44 (D.C.Cir.1989) ("United Mine Workers"). Moreover, the IRS II approach is consistent with the Authority's own longstanding view that an agency incurs no bargaining obligation when it takes action pursuant to a contractual provision that authorizes the action in question. See, e.g., Naval Amphibious Base, Little Creek, Norfolk, Va., 9 F.L.R.A. 774, 777 (1982) ("Naval Amphibious Base") (finding no duty to bargain where agency, in implementing adverse action against two employees, followed procedures prescribed by negotiated agreement).
 
 
 40
 In the cases at bar, the Authority departed from the approach adopted in IRS II. Relying upon its intervening decision in Corps of Engineers, the Authority conflated the two steps of the IRS II analysis by applying, as the test for whether a matter is "covered by" a collective bargaining agreement, the same standard that it adopted in IRS II for determining when a union has waived its right to negotiate through bargaining history. See Barstow, 39 F.L.R.A. at 1133; Albany, 39 F.L.R.A. at 1065. The result of the Authority's action is the addition of a novel "specificity" requirement to the IRS II "covered by" test--i.e., unless the collective bargaining agreement specifically addresses the precise matter at issue, then that matter is not "covered by" the agreement and the agency may be compelled to bargain over the matter anew. As shown below, see section II.B.2, infra, this newly-engrafted specificity requirement produces absurd results that cannot be squared with the policies of the FSLMRS.
 
 
 41
 Putting aside for the moment the flawed results produced by the Authority's new "covered by" test, we must also condemn the manner of its adoption, for the Authority has failed to advance any reasoned justification for its abandonment of the analytical structure of IRS II. In Corps of Engineers, the Authority explained its decision to conflate the "covered by" and "waiver" inquiries by stating, "We find no reason to apply a different standard to determine whether a matter is covered by the parties' agreement than is applied to determine whether a waiver by bargaining history has been established." 31 F.L.R.A. at 1235-36. But, as this court and others have recognized on numerous occasions, there is a reason to apply a different standard--namely, that the "covered by" and "waiver" inquiries are analytically distinct. A waiver occurs when a union knowingly and voluntarily relinquishes its right to bargain about a matter; but where the matter is covered by the collective bargaining agreement, the union has exercised its bargaining right and the question of waiver is irrelevant. As we explained in Electrical Workers, 927 F.2d at 641,
 
 
 42
 Where the contract fully defines the parties' rights as to what would otherwise be a mandatory subject of bargaining, it is incorrect to say the union has "waived" its statutory right to bargain; rather, the contract will control and the "clear and unmistakable" intent standard is irrelevant.
 
 
 43
 See also United Mine Workers, 879 F.2d at 944 (concluding that waiver standard not relevant where matter at issue was covered by contract); Mead Corp. v. NLRB, 697 F.2d 1013, 1020 (11th Cir.1983) (finding "covered by" and "waiver" inquiries to be analytically distinct). Cf. Ador Corp., 150 N.L.R.B. 1658, 1660 (1965) (holding that where negotiated agreement dealt with subject, "[t]he parties had, in effect, bargained about" the matter). See generally ROBERT A. GORMAN, BASIC TEXT ON LABOR LAW 458-63 (1976).
 
 
 44
 Indeed, the difference between the two concepts goes to the structural heart of labor law. When parties bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules--a new code of conduct for themselves--on that subject. Because of the fundamental policy of freedom of contract, the parties are generally free to agree to whatever specific rules they like, and in most circumstances it is beyond the competence of the Authority, the National Labor Relations Board or the courts to interfere with the parties' choice. Cf. H.K. Porter Co. v. NLRB, 397 U.S. 99, 106-07, 90 S.Ct. 821, 825, 25 L.Ed.2d 146 (1970). On the other hand, when a union waives its right to bargain about a particular matter, it surrenders the opportunity to create a set of contractual rules that bind the employer, and instead cedes full discretion to the employer on that matter. For that reason, the courts require "clear and unmistakable" evidence of waiver and have tended to construe waivers narrowly. See Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 708-09, 103 S.Ct. 1467, 1477-78, 75 L.Ed.2d 387 (1983); NLRB v. Brown-Graves Lumber Co., 949 F.2d 194, 198 (6th Cir.1991).
 
 
 45
 The analytical approach applied by the Authority in Albany and Barstow completely fails to take account of the fundamental distinction between the exercise of the right to bargain and the waiver of that right, a distinction which the Authority itself recognized in IRS II. Because this failure is unexplained--and, indeed, inexplicable--the Authority's decisions cannot be sustained.
 
 2. Policies of the FSLMRS
 
 46
 In addition to constituting an unexplained departure from the sensible analytical method adopted in IRS II, the "waiver" approach applied by the Authority in the cases at bar produces perverse and illogical results that cannot be squared with the policies of the FSLMRS. This circumstance provides a second ground upon which the Authority's decisions must be reversed.
 
 
 47
 We begin our analysis of this issue by clarifying what is not in dispute in this case. In its decisions in Albany and Barstow, and again at oral argument, the Authority made three critical concessions. First, the Authority concedes that the statutory right at issue in this case--the AFGE's right to engage in "impact and implementation" bargaining regarding employee work assignments and performance standards--is a right about which parties may legally bargain and which may be incorporated into a collective bargaining agreement.[9] In other words, the Authority makes no claim that it was improper for the Marine Corps and the AFGE to bargain with respect to the impact and implementation matters at issue in Albany and Barstow, or that those matters were somehow incapable of being "covered by" the resulting collective bargaining agreement. Second, the Authority concedes that where a matter is "covered by" a collective bargaining agreement, neither party has any obligation to engage in further bargaining with respect to that matter during the term of the agreement.[10] Finally, the Authority acknowledges that the parties to a bargaining relationship may resolve disputes over impact, implementation and consultation as they see fit. In other words, there is no statutory prescription defining what the results of "impact and implementation" bargaining must be; the parties may agree on extensive consultation and mitigation procedures, modest procedures or even no procedures at all.[11] Indeed, bargaining parties may legally agree on precisely what the Marine Corps and the AFGE agreed upon in Articles 16 and 31 of the MLA.
 
 
 48
 Despite its recognition of these principles, the Authority applied an analytical approach in Albany and Barstow which nullifies them. Under the "waiver" approach applied in those cases, a matter is not "covered by" a negotiated agreement unless the agreement "specifically addresses" the "particular subject matter" at issue. Thus, in Albany, the Authority rejected the Marine Corps' contention that the impact and implementation of "detailing" were covered by the MLA because Article 16 of the Agreement "did not contain the whole 'universe' of possible conditions that might pertain to the impact and implementation of employee details" and "did not 'even attempt to deal with the impact and implementation of specific individual details.' " 39 F.L.R.A. at 1069 (quoting ALJ Decision) (emphasis added). Similarly, in Barstow, the Authority concluded that the implementation of performance standards was not covered by the MLA because Article 31 "does not specifically address the full range of impact and implementation issues." 39 F.L.R.A. at 1133 (emphasis added).
 
 
 49
 The rather obvious problem with the Authority's "covered by" test is that it is, in practice, impossible to meet. Surely it would have required near-supernatural prescience for the parties to have foreseen, at the time of drafting the MLA, what implementation issues would arise with respect to "specific individual details" that had not even been conceived, much less implemented, at the time. Nor could any mortal drafter anticipate, perhaps months or years in advance, the "full range of impact and implementation issues" that could arise from an as yet unforeseen modification of performance standards. Indeed, the Authority implicitly recognized the unrealistic nature of its approach when, in Albany, it attempted to buttress its holding by arguing that the MLA did not address "all future impact and implementation matters." 39 F.L.R.A. at 1070 (emphasis added).
 
 
 50
 Thus, having recognized that there is no duty to bargain about matters covered by a collective bargaining agreement, the Authority, applying its "waiver" approach, has defined "covered by" so narrowly that bargaining will always be required. As the Marine Corps points out, the effect of the Authority's flawed approach is to make the collective bargaining agreement merely "the starting point for constant negotiations over every agency action." Brief for Petitioners at 32.
 
 
 51
 The Authority's approach is not only illogical but also impermissible, because it contravenes the policies of the FSLMRS. A primary purpose of the Statute is to promote collective bargaining and the negotiation of collective bargaining agreements. See 5 U.S.C. § 7102(2) (establishing right of employees "to engage in collective bargaining with respect to conditions of employment"); id. § 7114(a)(4) (requiring agency and union to "meet and negotiate in good faith for the purpose[ ] of arriving at a collective bargaining agreement"). Implicit in this statutory purpose is the need to provide the parties to such an agreement with stability and repose with respect to matters reduced to writing in the agreement. As the Authority itself recognized in Internal Revenue Service, 17 F.L.R.A. at 734, "[T]o the extent that the parties are required to adhere to the specific conditions of employment mutually established in their agreement during the life of such agreement, stability at the work place is thereby fostered."[12]
 
 
 52
 The Authority's "waiver" approach to the "covered by" inquiry subverts the statutory policies of contractual stability and repose by requiring essentially endless bargaining. At oral argument, the Authority's counsel candidly admitted that he could think of no circumstance in which the Marine Corps could "detail" an employee without being required to bargain. As such, it is clear that the Marine Corps' efforts at negotiating with the AFGE to reach a contractual agreement on "detailing" and the implementation of performance standards profited the agency nothing. Such a result creates a disincentive to engage in collective bargaining and undermines contractual repose, thereby contravening the policies of the FSLMRS. See id. at 736 (finding promotion of contractual repose necessary to avoid "discourag[ing] [parties] from engaging in the effort, as part of negotiation of their basic collective bargaining agreement, to foresee potential labor-management relations issues, and resolve those issues in as comprehensive a manner as practicable"). Cf. Dunham-Bush, Inc., 264 N.L.R.B. 1347, 1349 (1982) ("[T]he greater confidence the parties have that their agreements will be observed, the greater the incentive they will have to submit their disputes to the bargaining process.").
 
 
 53
 Worse still, the Authority's "waiver" approach effectively nullifies the terms of the parties' collective bargaining agreement. The FLRA acknowledges that the manner in which the MLA deals with employee "details" and performance standards is fully lawful. But the Authority's "waiver" approach robs the provisions covering those matters of all meaning because the Marine Corps is required to bargain anew regarding the same matters already addressed in the agreement. The agency thereby loses the benefit of its bargain with the AFGE.
 
 
 54
 The fallacy in the Authority's position is most clearly demonstrated by considering what would have happened if the parties had never bargained about the "detailing" of employees or the implementation of performance standards, so that the collective bargaining agreement contained no provisions on these matters. Had this occurred, and had the parties then engaged in mid-term bargaining and reached agreement on provisions identical to those actually contained in Articles 16 and 31 of the MLA, no one would doubt that the Marine Corps had fulfilled its statutory duty to bargain. Yet, the Authority inexplicably reached the opposite result here, where the only difference is that the parties bargained somewhat earlier in time.
 
 
 55
 In short, the "waiver" approach applied by the Authority in Albany and Barstow is "incompatible with ... the terms [and] the purpose of the controlling statute." AFGE, Local 32, 853 F.2d at 991. Consequently, we must reverse the Authority's decisions in those cases.
 
 
 56
 3. Inconsistency With Private Sector Labor Law
 
 
 57
 The third flaw in the Authority's "waiver" approach is that it is inconsistent with the principles of private sector labor law upon which the Authority purported to rely, and which the Authority advances in this court in defense of the results reached in Albany and Barstow.[13] Under private sector law, the parties to a collective bargaining agreement may negotiate about many matters that would otherwise constitute "statutory rights"; if agreement is reached, the parties' collective bargaining agreement supplants the statute as the source of rights and obligations regarding such matters. See Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 705-07, 103 S.Ct. 1467, 1475-76, 75 L.Ed.2d 387 (1983); Plumbers & Pipefitters Local Union No. 520 v. NLRB, 955 F.2d 744, 754 (D.C.Cir.1992); American Freight Sys., Inc. v. NLRB, 722 F.2d 828, 832 (D.C.Cir.1983). In Albany and Barstow, the Authority paid lip service to this principle by holding that parties may negotiate contractual provisions that "cover" the union's statutory right to bargain over impact and implementation matters, such that the negotiated agreement will take the place of the statutory right with respect to those matters. But the Authority's waiver-based approach for determining when a subject is "covered by" a collective bargaining agreement makes that result virtually impossible to attain. As such, the Authority's approach runs counter to the very private sector principles that the Authority apparently intended to follow.
 
 
 58
 The Authority argues that its "waiver" approach is consistent with NLRB v. Jacobs Mfg. Co., 196 F.2d 680 (2d Cir.1952), and other private sector precedents. But Jacobs Mfg. Co. and its progeny have never been read to require continuous bargaining with respect to matters addressed in a collective bargaining agreement. This court, other courts of appeals and the National Labor Relations Board ("Board") have rejected that notion time and time again. See, e.g., Electrical Workers, 927 F.2d at 640 ("The union may exercise its right to bargain about a particular subject by negotiating for a provision in the collective bargaining contract that fixes the parties' rights and forecloses further mandatory bargaining as to that subject."); International Union, UAW v. NLRB, 765 F.2d 175, 179-80, 183 & n. 30 (D.C.Cir.1985) ("Milwaukee Spring"); N L Indus., Inc. v. NLRB, 536 F.2d 786, 790 (8th Cir.1976); C & S Indus., Inc., 158 N.L.R.B. 454, 457 (1966).
 
 
 59
 Indeed, the Authority's narrow test for when a matter is "covered by" a negotiated agreement is patently inconsistent with private sector law. In C & S Industries, Inc., id. at 459, the Board held that a matter need not be specifically mentioned in a collective bargaining agreement in order to be "covered by" the agreement. There, the Board found that the subject of an incentive wage structure was "covered by" the parties' contract, reasoning that "[a]lthough the contract makes no specific mention of wage incentives, such incentives are inseparably bound up with and are thus plainly an aspect of the payment of wages, a subject expressly covered by the contract." Id.; see also Dunham-Bush, Inc., 264 N.L.R.B. at 1348 n. 4 (finding matter not specifically mentioned in negotiated agreement to be contained in agreement "by implication"). The Board's relatively expansive conception of when a matter is covered by a contract is consistent with this court's prior cases. For example, in United Mine Workers, 879 F.2d at 942-44, we affirmed a Board decision that an employer's right to subcontract work was "covered by" the applicable collective bargaining agreement (and therefore not subject to the duty to bargain when exercised), despite the fact that the relevant contractual provision far from addressed the full gamut of issues raised by the union. Rejecting the union's argument that waiver analysis was appropriate, we concluded that although the provisions of the contract may have left "many unresolved and difficult questions" regarding the employer's subcontracting rights, those questions were "properly resolved through the contractual grievance procedure" and not through an unfair labor practice case. Id. at 944.
 
 
 60
 In short, then, the Authority's approach in the cases at bar is not supported by the private sector precedent upon which the Authority purported to rely. The Authority's test for when a matter is "covered by" a collective bargaining agreement is significantly narrower than the standard that obtains in the private sector. Indeed, the Authority's test is so narrow that it effectively prevents the parties from ever fully incorporating any mandatory subject of bargaining into their collective bargaining agreement, a result totally at odds with private sector principles. Because the Authority purported to rely on private sector law in formulating its "waiver" approach, its departure from those principles constitutes an independent ground upon which reversal is warranted.
 
 C. The Cases at Issue
 
 61
 Having considered, and rejected, the Authority's so-called "waiver" approach for determining when a matter is "covered by" a collective bargaining agreement, we now turn to an examination of the facts of the cases at bar. The Marine Corps argues that under any reasonable definition of "covered by," the impact and implementation of employee "details" and performance standards are "covered by" the MLA. We agree.
 
 
 62
 The MLA contains detailed provisions concerning the procedures that the Marine Corps must follow when it temporarily reassigns employees or modifies performance standards. Article 16 of the Agreement defines when employee "details" will be implemented, to what kinds of positions an employee may be detailed, how long a detail may last and what effect a detail will have on an employee's salary and liability for union dues. See Albany, 39 F.L.R.A. at 1077 n. 1 (ALJ Decision) (reprinting Article 16). Similarly, Article 31 of the MLA establishes comprehensive procedures that the agency must follow when it modifies performance criteria--including advance notice to employees, an opportunity for employee participation in the creation of performance standards and an overarching requirement that the standards implemented be "fair and reasonable." See Barstow, 39 F.L.R.A. at 1128. The obvious purpose of both Articles is to limit the Marine Corps' discretion in exercising its right to detail employees and set performance criteria, with a view towards mitigating the impact of those actions on affected employees. And since Articles 16 and 31 are subject to the MLA's grievance and arbitration procedures, any deviations by the agency from their terms can be checked by resort to arbitration.
 
 
 63
 To be sure, neither Article 16 nor Article 31 "specifically address[es] the full range of impact and implementation issues" that might conceivably arise, id. at 1133; but, as we have explained, such a standard is both unrealistic and impermissible. That the Authority embraced it merely demonstrates the depth of the confusion engendered by the Authority's flawed transformation of the two-part duty to bargain test adopted in IRS II into a one-part "clear and unmistakable waiver" inquiry.
 
 
 64
 We conclude that under any reasonable definition of the term "covered by," the impact and implementation matters related to employee details and performance criteria are covered by Articles 16 and 31 of the MLA. Moreover, given the FSLMRS's policy of promoting collective bargaining by preserving contractual repose, we believe that this conclusion follows inescapably from the purposes of the Statute itself.
 
 
 65
 The Authority does not contest the Marine Corps' assertion that it fully complied with the requirements of Articles 16 and 31 of the MLA when it detailed the four Albany employees and implemented the new performance criteria at the Barstow facility. As such, the Marine Corps incurred no obligation to consult or bargain with the AFGE, because the "impact and implementation" issues relevant to those actions are "covered by" the MLA--that is, the agency and the union had already bargained with respect to those matters. It follows that the Marine Corps did not violate the Statute on the facts presented in Albany and Barstow, and that the Authority erred by concluding otherwise.
 
 
 66
 Put another way, the MLA plainly authorized the Marine Corps to detail employees and establish performance criteria in the manner that it did. Consequently, the agency's actions did not effect a "change" in the employees' conditions of employment, and so no bargaining obligation arose. See 5 U.S.C. § 7117(d)(2)(A) (providing that agency's duty to consult arises only as to "any substantive change in conditions of employment proposed by the agency") (emphasis added); Naval Amphibious Base, 9 F.L.R.A. at 777 (finding no duty to bargain where agency followed procedures specified in contract in taking "adverse action" against employees). Cf. Milwaukee Spring, 765 F.2d at 183 n. 30 ("Obviously, if the Company had the contractual right to make the relocation decision, it had no duty to bargain before making that decision.").
 
 
 67
 In reaching this result, we need not, and do not, attempt to establish a definitive test for determining when an otherwise bargainable matter is "covered by" a public sector collective bargaining agreement, such that there is no further duty on the part of the agency to engage in "impact and implementation" bargaining with respect to that matter. We do hold, however, that the FLRA's so-called "waiver" approach cannot withstand scrutiny in a case of this sort; we also hold that whatever the precise parameters of the "covered by" standard may be, the matters at issue in Albany and Barstow fall well within the ambit of that term.
 
 III. CONCLUSION
 
 68
 Once the confusion engendered by the Authority's impermissible "waiver" approach is removed, it becomes clear that this is an easy case. The FSLMRS gave the Marine Corps the right to "detail" employees and set performance criteria, subject to the obligation that the agency bargain with the union over the impact and implementation of its exercise of those rights. Here, the Marine Corps fulfilled its obligation by bargaining with the AFGE during the negotiations leading up to the adoption of the MLA. The results of that bargaining are Articles 16 and 31 of the Agreement, which set forth specific, agreed-upon procedures that the Marine Corps must follow when it implements employee details and revises performance standards. As the Authority concedes, the Marine Corps followed these bargained-for procedures in the two cases at bar. The Statute requires no more.
 
 
 69
 For that reason, and for those stated above, we grant the Marine Corps' petition for review, deny the Authority's cross-application for enforcement and reverse the Authority's decisions in Albany and Barstow. The cases are remanded with instructions that the unfair labor practice complaints be dismissed.
 
 
 70
 SO ORDERED.
 
 
 
 [1]
 As we noted in AFGE, Local 1923 v. FLRA, 819 F.2d 306, 308 (D.C.Cir.1987), there is some tension between subsection (a) of section 7106, which reserves certain prerogatives to an agency's discretion, and subsection (b), which requires the agency to bargain with employee unions regarding the procedures it will follow in exercising its reserved discretion. By ascribing certain management rights to agencies, but tempering those rights through the requirement of impact and implementation bargaining, Congress sought to strike a compromise between the agency's need to manage itself efficiently and the employees' right to participate in the decisions that affect them. See Office of Personnel Management v. FLRA, 864 F.2d 165, 168 (D.C.Cir.1988). That the balance struck by Congress is a delicate one--easily upset by a untoward shift of power to either party--is aptly demonstrated by the facts of this case
 
 
 [2]
 The management of the Albany facility had detailed employees on at least 15 prior occasions without objection by the union. See Albany, 39 F.L.R.A. at 1080 (ALJ Decision)
 
 
 [3]
 In Social Security Administration v. FLRA, 956 F.2d 1280, 1288-89 (4th Cir.1992), the Fourth Circuit held, contrary to our decision in NTEU, that there is no mid-term duty to bargain over union-initiated proposals under the FSLMRS. Although we are, of course, bound by the result reached in NTEU, we note that the policy rationales upon which the Fourth Circuit relied in reaching the contrary result--the need for stability and predictability during the term of a collective bargaining agreement--are entirely consistent with, and furthered by, our holding today
 
 
 [4]
 In discussing the second category of "waiver"--waiver by "bargaining history"--the FLRA concluded that, where a matter is raised in collective bargaining negotiations, but not "specifically covered" in the contract, the union will be deemed to have clearly and unmistakably waived its right to bargain about that matter during the contract term. IRS II, 29 F.L.R.A. at 167. In describing the test for waiver by bargaining history, the Authority wrote:
 The particular words of proposals offered during contract and mid-term negotiations need not be identical for a waiver to exist. On the other hand, the fact that a mid-term proposal may relate to a general subject area covered in a collective bargaining agreement will not relieve an agency of its obligation to bargain. Rather, the determinative factor is whether the particular subject matter of the proposals offered during contract and mid-term negotiations is the same.
 Id. (emphasis added).
 
 
 [5]
 See 31 F.L.R.A. at 1235 ("In [IRS II ], we addressed the similarity which must exist between mid-term proposals and matters which are covered in a collective bargaining agreement in order to establish a waiver by bargaining history.... We find no reason to apply a different standard to determine whether a matter is covered by the parties' agreement....")
 
 
 [6]
 This court's decision in NTEU surely does not compel this result, and two judges of the court expressly rejected such an approach in the denial of initial hearing en banc in Internal Revenue Service, see 838 F.2d at 568. In addition, the Fourth Circuit recently has flatly rejected the FLRA's analysis with respect to the duty to bargain during the term of an agreement. See note 3 supra
 
 
 [7]
 See, e.g., Department of the Army, United States Army Enlisted Records & Evaluation Ctr., Fort Benjamin Harrison, Ind., 41 F.L.R.A. 885, 896 (1991) (holding that waiver analysis governs cases where collective bargaining agreement raised as defense to alleged violation of statutory bargaining rights); Department of the Army, United States Army Fin. & Accounting Ctr., Indianapolis, Ind., 39 F.L.R.A. 1586, 1587 (1991) (characterizing standard for duty to bargain as whether union "clearly and unmistakably substituted a contractual provision for its statutory right")
 
 
 [8]
 A zipper clause is a provision of a collective bargaining agreement which "purports to close out bargaining during the contract term and to make the written contract the exclusive statement of the parties' rights and obligations." ROBERT A. GORMAN, BASIC TEXT ON LABOR LAW 471 (1976)
 
 
 [9]
 See Barstow, 39 F.L.R.A. at 1132-33 (noting that impact and implementation matters regarding performance standards may be "contained in" negotiated agreement); Albany, 39 F.L.R.A. at 1065, 1067 (noting that impact and implementation of "detailing" may be "covered by" agreement)
 
 
 [10]
 See Barstow, 39 F.L.R.A. at 1132 ("The [Marine Corps] would indeed be correct [that it had no duty to bargain with the AFGE] if the 'matter' at issue were contained in the agreement because no bargaining obligation continues during the term of an agreement concerning negotiable matters that are contained in that agreement."); Albany, 39 F.L.R.A. at 1065 (same)
 
 
 [11]
 See 5 U.S.C. § 7103(a)(12) ("the obligation [to bargain in good faith] ... does not compel either party to agree to a proposal or to make a concession"); cf. H.K. Porter Co., 397 U.S. at 106, 90 S.Ct. at 825 (" '[T]he Board may not, either directly or indirectly, compel concessions or otherwise sit in judgment upon the substantive terms of collective bargaining agreements.' " (quoting NLRB v. American Ins. Co., 343 U.S. 395, 404, 72 S.Ct. 824, 829, 96 L.Ed. 1027 (1952)))
 
 
 [12]
 See also Social Sec. Admin., 956 F.2d at 1288 (emphasizing importance of contractual stability and repose to goals of FSLMRS); Federal Aviation Admin., Northwest Mountain Region, Seattle, Wash., 14 F.L.R.A. 644, 647 (1984) (finding stability in labor-management relations to be "an underlying purpose of the Statute")
 
 
 [13]
 See IRS II, 29 F.L.R.A. at 166 (describing Authority's approach as "consonant with case law in the private sector"); Brief for the Federal Labor Relations Authority at 33 ("[T]he Authority's standard is consistent with the private sector standard.")